The STATE of Ohio ex rel. DAYTON LAW LIBRARY ASSOCIATION

v.

WHITE, Clerk of Kettering Municipal Court, et al.

[Cite as *State ex rel. Dayton Law Library Assn. v. White*, 163 Ohio App.3d 118, 2005-Ohio-4520.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. CA 20125.

Decided Aug. 15, 2005.

Janet K. Cooper and Diane Gentile, for relator.

Mark I. Wallach and Matthew M. Mendoza; and David L. Eubank, city of Kettering Law Director, and Theodore A. Hamer III, for respondent Andrea White.

Victoria E. Watson, Montgomery County Assistant Prosecuting Attorney, for respondents Montgomery County Board of Commissioners and Hugh Quill.

PER CURIAM.

{¶ 1} This litigation stems from a complaint for a writ of mandamus filed by relator, Dayton Law Library Association, against respondent Kettering Municipal Court Clerk Andrea White.[1] After the Law Library Association filed its complaint, we granted the Kettering Municipal Court Clerk's request to join Montgomery County Treasurer Hugh Quill and the Montgomery County Board of Commissioners as additional respondents.[2] The Kettering Municipal Court Clerk

---

1. Pursuant to Civ.R. 25(D), we previously substituted Andrea White as a party to this action in place of Gerald E. Busch, who was the Kettering Municipal Court Clerk when the Dayton Law Library Association filed its complaint for a writ of mandamus.

2. Hereinafter, we will refer to Montgomery County Treasurer Hugh Quill and the Montgomery County Board of Commissioners collectively as "Montgomery County."

then filed a cross-claim, which later was amended to include only requests for relief in mandamus against Montgomery County. In turn, Montgomery County filed its own cross-claim against the Kettering Municipal Court Clerk, seeking writs of prohibition and mandamus.

{¶ 2} The foregoing actions all flow from a payment dispute between Montgomery County and the Kettering Municipal Court Clerk. For nearly 30 years, the Kettering Municipal Court Clerk has billed Montgomery County for what have been characterized as court costs incurred in connection with "unsuccessful" state-law prosecutions that take place in Kettering Municipal Court.[3] In November 2001, Montgomery County refused to continue paying the charges, arguing that it had no legal obligation to do so.

{¶ 3} In response, the Kettering Municipal Court Clerk began deducting the unpaid costs from certain money collected in fines that the Clerk periodically owes Montgomery County pursuant to various statutes. After offsetting the unpaid debt allegedly owed by Montgomery County, the Kettering Municipal Court Clerk has paid Montgomery County the difference.

{¶ 4} The dispute between the Kettering Municipal Court Clerk and Montgomery County has affected the Dayton Law Library Association. Under R.C. 3375.53, the Law Library Association is entitled to a portion of the fine money owed by the Kettering Municipal Court Clerk to Montgomery County. Because the Kettering Municipal Court Clerk is withholding some of that money as a set-off against the debt allegedly owed by Montgomery County, the county, in turn, is giving the Dayton Law Library Association a set percentage of the fine money that it *actually receives* from the Kettering Municipal Court Clerk rather than that percentage of the money *owed to the county* by statute.

{¶ 5} As a result, the Dayton Law Library Association brought the present action, seeking a writ of mandamus directing the Kettering Municipal Court Clerk to "cease and desist" deducting costs incurred for unsuccessful state-law prosecutions from the fine money owed to Montgomery County and to remit previously withheld funds.

{¶ 6} In its cross-claim, Montgomery County seeks (1) a writ of prohibition directing the Kettering Municipal Court Clerk to stop charging the county the costs incurred in connection with unsuccessful state-law prosecutions and to stop offsetting those costs against the fine money the Clerk owes Montgomery

---

3. The parties do not dispute that the Ohio Revised Code requires the city of Kettering to prosecute in Kettering Municipal Court violations of state law that occur within its jurisdiction. See, e.g., R.C. 1901.34. The Kettering Municipal Court Clerk has billed Montgomery County for costs incurred in connection with any state-law charge that does not result in a conviction, even if a conviction was obtained on one or more other state-law charges.

County, and (2) a writ of mandamus directing the Kettering Municipal Court Clerk to pay Montgomery County the fine money that has been withheld.

{¶ 7} In an amended cross-claim, the Kettering Municipal Court Clerk seeks a writ of mandamus directing Montgomery County (1) to pay all costs in unsuccessful state-law criminal cases prosecuted on behalf of the county in Kettering Municipal Court, (2) to "account for or give credit to Kettering for the payments that Kettering has made to the County by discharging indebtedness that the County owes to Kettering for court costs in 'unsuccessful' state law criminal cases," and (3) to "base the calculation of the amounts that it must pay to the Law Library pursuant to R.C. § 3375.53 upon *all* of the payments that Kettering has made to the County[,]" including payments made by offsetting and discharging debts that Montgomery County allegedly owes for the prosecution of unsuccessful state-law criminal cases.

{¶ 8} Now pending before the court are numerous motions, including a motion by the Kettering Municipal Court Clerk for summary judgment on (1) the complaint for a writ of mandamus filed by the Dayton Law Library Association, (2) the mandamus claims set forth in the Clerk's own amended cross-claim against Montgomery County, and (3) the mandamus claim contained in Montgomery County's cross-claim against the Clerk. In addition, Montgomery County has moved for summary judgment on (1) its cross-claim against the Kettering Municipal Court Clerk and (2) the Kettering Municipal Court Clerk's amended cross-claim against Montgomery County.[4] Finally, the Dayton Law Library Association has moved for summary judgment on its complaint for a writ of mandamus against the Kettering Municipal Court Clerk.

## I. Analysis

{¶ 9} All but one of the claims in this case seek relief through mandamus. "For a writ of mandamus to issue, a relator must demonstrate that (1) the relator has a clear legal right to the relief prayed for, (2) respondent is under a corresponding clear legal duty to perform the requested acts, and (3) relator has no plain and adequate legal remedy." *State ex rel. Serv. Emp. Internatl. Union, Dist. 925 v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 173, 176–177, 689 N.E.2d 962. The one nonmandamus claim in this case seeks a writ of prohibition. To be entitled to such a writ, a relator must establish that (1) the respondent is about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denial of the writ will cause injury for

---

4. Alternatively, Montgomery County has moved to dismiss the Kettering Municipal Court Clerk's amended cross-claim pursuant to Civ.R. 12(B)(6) and 12(B)(7).

which no other adequate remedy in the ordinary course of law exists. *State ex rel. Henry v. McMonagle* (2000), 87 Ohio St.3d 543, 544, 721 N.E.2d 1051.

{¶ 10} In order to sustain one or more of the pending summary judgment motions, we must be able to conclude that the claims raised by the Dayton Law Library Association, the Kettering Municipal Court Clerk, and/or Montgomery County are capable of being resolved as a matter of law. It is well settled that "[s]ummary judgment pursuant to Civ.R. 56 should be granted only if no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which conclusion is adverse to the nonmoving party. When considering a motion for summary judgment, the evidence must be construed in favor of the nonmoving party." (Citations omitted.) *Wheelbarger v. Dayton Bd. of Edn.*, Montgomery App. No. 20272, 2004-Ohio-4367, 2004 WL 1857120.

{¶ 11} Although the parties' motions raise a number of issues, we begin our analysis with one that is common to, and in our view largely dispositive of, the Dayton Law Library Association's complaint, the cross-claim asserted by Montgomery County, and the amended cross-claim asserted by the Kettering Municipal Court Clerk. That issue concerns Montgomery County's obligation to pay the Kettering Municipal Court Clerk for court costs incurred in connection with the unsuccessful state-law prosecutions that occur in Kettering Municipal Court.

{¶ 12} In support of the position that Montgomery County is required to pay all such costs, the Kettering Municipal Court Clerk relies primarily on three Ohio Attorney General opinions and authorities cited therein.[5] In 1974 Ohio Atty.Gen. Ops. No. 74–077, the Attorney General reasoned that "the fees of jurors and witnesses are to be taxed as costs and paid out of the county treasury" in a municipal court criminal action involving a state-law violation.[6] This conclusion flows from statutes expressly providing for a county to pay these expenses. See R.C. 1901.25, 1901.26(A)(4), and 2335.08.

{¶ 13} The second opinion, 1977 Ohio Atty.Gen.Ops. No. 77–088, also addressed a county's payment of costs in unsuccessful state-law prosecutions brought in municipal court. The issue there was whether Montgomery County

---

5. The Kettering Municipal Court Clerk also cites *White v. White* (1977), 50 Ohio App.2d 263, 4 O.O.3d 225, 362 N.E.2d 1013, a Cuyahoga County domestic-relations case, for the general proposition that the party incurring court costs "remains primarily liable to the clerk of courts for the costs incurred at his instance."

6. The Attorney General also recognized that a county may be reimbursed if juror and witness fees subsequently are paid by a convicted defendant. In an unsuccessful prosecution, however, a defendant cannot be held responsible for any court costs. *Cuyahoga Falls v. Coup–Peterson* (1997), 124 Ohio App.3d 716, 717, 707 N.E.2d 545. Thus, the county would remain responsible for the costs.

was obligated to pay the Kettering Municipal Court the "costs for filing fees, witness fees, subpoenas, bench warrants and summonses, court costs, prisoner costs, juror costs, mileage, and the sheriff." The Attorney General concluded that Montgomery County was responsible for these expenses. In reaching this conclusion, the Attorney General relied in part on the fact that various statutes expressly obligate a county to bear specific costs when state-law violations are prosecuted in municipal court. As noted above, R.C. 1901.25, 1901.26(A)(4), and 2335.08 obligate a county to pay the fees of jurors and witnesses in municipal court cases involving violations of state law. In addition, the Attorney General observed that R.C. 2335.12 obligates a county to pay for service of writs in such cases.[7] The Attorney General also noted that R.C. 1901.34 obligates a county to provide partial compensation for municipal employees who participate in the prosecution of state-law violations.

{¶ 14} In addition to the foregoing provisions, the Attorney General noted that under R.C.1901.31(F), a county is entitled to receive certain fine money collected when state-law violations are successfully prosecuted in municipal court. The Attorney General inferred from this section "that in prosecutions for violations of state law the county is the subdivision most directly involved in the prosecution." Finally, the Attorney General stated that the costs collected by a municipal court clerk in state-law criminal cases were to be paid into the county treasury. In light of this fact, the Attorney General reasoned: "If the county is the recipient of the various costs and fines received in a successful prosecution of an individual for the violation of a state law, it is reasonable to conclude that the county must bear the necessary cost in the event that the defendant is either acquitted or dismissed."

{¶ 15} In the third opinion, 2003 Ohio Atty.Gen.Ops. No. 2003–016, the Attorney General reaffirmed his office's position regarding Montgomery County's responsibility to pay court costs in state-law prosecutions brought in Kettering Municipal Court.[8] In so doing, the Attorney General noted that Montgomery

---

7. Although this statute is located in the Title of the Revised Code governing common pleas courts, R.C. 2335.12 by its terms also appears to apply to municipal court cases involving state-law criminal charges. It provides: "In all state cases, any wholly salaried minor court officer, charged with the execution of a warrant to arrest or order of commitment, shall receive from the county treasury the actual necessary expense of executing such writs upon specifically itemized bills, verified by the oath of such officer, and certified to by the proper magistrate, court, or clerk thereof. Such expense shall, in a like manner, be paid from the municipal treasury when incurred in ordinance cases."

8. The impetus behind Montgomery County's request for a new opinion was R.C.1901.31(F), which provides, "Except in a county-operated municipal court, the clerk shall pay all costs and fees the disbursement of which is not otherwise provided for in the Revised Code into the city treasury." It is undisputed that the Kettering Municipal Court is not a county-operated

County receives, subject to various statutory provisions, the fines collected in successful state-law prosecutions brought in Kettering Municipal Court. The Attorney General also stressed that the Revised Code "explicitly requires counties to pay certain specific costs and fees when criminal prosecutions involving violations of state law are brought in municipal courts." Id. The Attorney General inferred from this fact "that the General Assembly intended for a county to pay court costs when a criminal prosecution brought in a municipal court for an alleged violation of state law is unsuccessful." Id.

{¶ 16} The Attorney General also considered "what type and kind of court costs" a county must pay when a state-law prosecution brought in municipal court results in dismissal or acquittal. Id. In this regard, the Attorney General acknowledged "several statutes that set forth costs and fees that may be assessed against the county by a municipal court in a criminal prosecution." Id. In particular, the Attorney General noted that a municipal court may charge a county the juror and witness fees in a criminal case involving a state-law violation. The Attorney General then recognized that under R.C. 1901.26(A) and (B), municipal courts are authorized to assess a wide variety of fees and costs. After briefly identifying these expenses, the Attorney General concluded:

{¶ 17} "Various statutes thus authorize a municipal court to assess certain costs and fees against the county when a criminal prosecution brought in a municipal court for an alleged violation of state law results in the dismissal or acquittal of the defendant. * * * [A] county must pay any cost or fee assessed against it by a municipal court in a criminal prosecution for an alleged violation of state law, provided the court is statutorily authorized to assess the cost or fee against the county."[9] Id.

---

municipal court under the statute. As a result the Kettering Municipal Court Clerk generally is required to pay all costs and fees received into the *city* treasury. Montgomery County argued that this fact undermined the reasoning in the Attorney General's prior opinion, 1977 Ohio Atty.Gen.Ops. No. 77–088, which had indicated that such costs and fees were payable to the *county*. The Attorney General rejected Montgomery County's argument, however, noting that it still benefitted, at least indirectly and in part, from the city of Kettering's retention of the court costs. This is so because at least some of the court costs collected by a municipal court clerk in state-law criminal prosecutions are credited toward a county's obligation to pay the compensation of various municipal officials.

9. The Attorney General declined to identify all potential costs that a municipal court may assess against a county, noting: "There are many different types of criminal prosecutions that may be undertaken on behalf of the state in municipal courts. Also, the services provided by a municipal court in criminal prosecutions varies [sic] from case to case. It is, therefore, not possible, by means of a formal opinion, to list all of the court costs that a municipal court may assess against a county when a criminal prosecution for an alleged violation of state law results in the dismissal or acquittal of the defendant." (Citations omitted.) 2003 Ohio Atty.Gen.Ops. No. 2003–016, fn. 8.

126

{¶ 18} In the present case, the Kettering Municipal Court Clerk is billing Montgomery County at least $45 for *each count* of a state-law criminal prosecution that does not result in a conviction. For example, if a defendant pleads guilty to one count in exchange for the dismissal of three others, the Kettering Municipal Court Clerk is charging Montgomery County a minimum of $135 for "court costs." These charges consist of a "complaint" fee, a "court computer fund" fee, a "clerk computer fund" fee, and a "special projects fund" fee. As statutory authority for assessing these charges against Montgomery County, the Kettering Municipal Court Clerk cites R.C. 1901.26 and 1901.261. Having reviewed those statutory provisions, we are not persuaded that Montgomery County is obligated to pay the foregoing fees.

{¶ 19} We do not dispute the Attorney General's axiomatic conclusion that a county must pay any cost or fee that a municipal court is statutorily authorized to assess against it. But we see no statutory authority for the Kettering Municipal Court Clerk to assess a "complaint" fee, a "court computer fund" fee, a "clerk computer fund" fee, and a "special projects fund" fee against Montgomery County. It is true that these fees are listed in R.C. 1901.26 and 1901.261 as being among those that a municipal court may impose and tax as costs. It is equally true that the statutes authorize these fees to be imposed on the filing of each "criminal cause" or cause of action. We find nothing, however, in either R.C. 1901.26 or 1901.261 that authorizes a municipal court to impose *these fees* against *a county*.

{¶ 20} Ordinarily, we might be inclined to treat Montgomery County like any other litigant and, therefore, to presume that it is responsible for paying any costs or fees that the Kettering Municipal Court generally is authorized to assess under R.C. 1901.26 or 1901.261.[10] After reviewing the full statutory scheme governing the relationship between Montgomery County and the Kettering Municipal Court, however, we are persuaded otherwise. As noted above, the Revised Code provides for the city of Kettering to prosecute certain violations of state law in the Kettering Municipal Court. See, e.g., R.C. 1901.34. In turn, the Revised Code requires Montgomery County to bear certain financial responsibilities in connection with state-law prosecutions brought in the Kettering Municipal Court. These responsibilities include paying part of the salary and health-insurance costs for various municipal-court employees. See, e.g., R.C. 1901.11(C), 1901.111, 1901.32(A)(1) and 1901.31(C)(3). With some exceptions, the Revised Code also requires the Kettering Municipal Court Clerk to pay certain fine and forfeited bond money to Montgomery County and allows the City of Kettering to

---

10. In order to do so, of course, we would have to overlook the fact that Montgomery County is not an actual party to state-law criminal prosecutions brought by the City of Kettering in the Kettering Municipal Court.

retain certain costs and fees collected in state-law criminal prosecutions. See, e.g., R.C. 1901.31(F), 4301.57, 4513.35, and 5503.04. Finally, with regard to the payment of costs and fees imposed in connection with state-law prosecutions brought in Kettering Municipal Court, the Revised Code expressly obligates Montgomery County to pay *some* such expenses. As noted above, R.C. 1901.25, 1901.26(A)(4), and 2335.08 obligate a county to pay the fees of jurors and witnesses in municipal court cases involving violations of state law. In addition, R.C. 2335.12 obligates a county to pay for service of writs in such cases.

{¶ 21} The foregoing provisions reveal that the General Assembly has carefully considered and structured the terms of the relationship between Montgomery County and the Kettering Municipal Court with regard to the prosecution of state-law offenses by the City of Kettering. Given the specificity with which the General Assembly has acted in this area, we are disinclined to infer a legislative intent to subject Montgomery County to the fees for which the Kettering Municipal Court Clerk seeks compensation.

{¶ 22} Through R.C. 1901.26 and 1901.261, the General Assembly has identified various costs and fees that a municipal court generally may impose. As noted above, however, it also has specifically directed that *certain* costs and fees are to be billed to a county when a criminal prosecution in municipal court involves a state-law charge. If the General Assembly had intended for Montgomery County to bear responsibility for paying the other costs and fees set forth in the Revised Code, it could have imposed such an obligation explicitly—as it did with juror fees, witness fees, warrant fees, and even the salaries for certain municipal court employees. We perceive the legislature's failure to do so as an indication that it did not intend for Montgomery County to pay a "complaint" fee, a "court computer fund" fee, a "clerk computer fund" fee, and a "special projects fund" fee each time a state-law charge results in dismissal or acquittal.[11] As a result, we reject the Kettering Municipal Court Clerk's argument that Montgomery County has a clear legal duty to pay these charges.[12]

---

**11.** We make two observations in response to the Kettering Municipal Court Clerk's rejoinder that if Montgomery County does not pay these fees then no one will pay them. First, the fact that these fees may go unpaid is not, in our view, an adequate reason to assess them against Montgomery County absent an indication that the General Assembly intended such a result. Second, the impact of the Kettering Municipal Court Clerk's inability to collect these fees from Montgomery County is perhaps diminished by the fact that they are not true out-of-pocket court costs as are the juror and witness fees that the Revised Code expressly obligates Montgomery County to pay. Instead, the "complaint" fee, "court computer fund" fee, "clerk computer fund" fee, and "special projects fund" fee at issue herein appear to be largely in the nature of court-improvement fees levied to finance the betterment of the Kettering Municipal Court rather than to reimburse the court for actual costs.

**12.** Although the Revised Code does obligate Montgomery County to pay juror fees, witness fees, and warrant fees, these types of fees are not at issue in the present litigation. Montgom-

{¶ 23} In light of the foregoing conclusion, we will sustain Montgomery County's motion for summary judgment on the Kettering Municipal Court Clerk's amended cross-claim. Therein, the Kettering Municipal Court Clerk seeks a writ of mandamus directing Montgomery County (1) to pay all costs in unsuccessful state-law criminal cases prosecuted on behalf of the county in Kettering Municipal Court, (2) to "account for or give credit to Kettering for the payments that Kettering has made to the County by discharging indebtedness that the County owes to Kettering for court costs in 'unsuccessful' state law criminal cases," and (3) to "base the calculation of the amounts that it must pay to the Law Library pursuant to R.C. § 3375.53 upon *all* of the payments that Kettering has made to the County," including payments made by offsetting and discharging debts that Montgomery County allegedly owes for the prosecution of unsuccessful state-law criminal cases. Based on the reasoning set forth above, we conclude that the Kettering Municipal Court Clerk is not entitled to any of this relief and that Montgomery County is entitled to judgment as a matter of law on the Clerk's amended cross-claim.[13]

█ {¶ 24} By the same token, we find that Montgomery County is entitled to summary judgment on its cross-claim for a writ of mandamus directing the Kettering Municipal Court Clerk to pay Montgomery County the fine money that has been withheld as an offset against unpaid costs incurred in connection with unsuccessful state-law prosecutions. Based on the reasoning set forth above, Montgomery County has a clear legal right to the relief prayed for, the Kettering Municipal Court Clerk is under a corresponding clear legal duty to perform the requested act, and Montgomery County has no plain and adequate legal remedy.[14]

ery County has conceded its responsibility for paying these statutorily imposed charges. Given that (1) the Kettering Municipal Court Clerk has scarcely mentioned the issue of juror fees, witness fees, and warrant fees, and has not identified the amount of any such fees and (2) Montgomery County does not dispute its obligation to pay such fees, we do not perceive these fees to be part of the dispute before us.

13. Montgomery County's alternative March 15, 2005 motion to dismiss the Kettering Municipal Court Clerk's amended cross-claim is overruled as moot. For purposes of completeness, we also overrule as moot the Kettering Municipal Court Clerk's March 30, 2005 motion for an extension of time to move for summary judgment and to file a brief in opposition to Montgomery County's motions. The record reflects that the Kettering Municipal Court Clerk filed the motion for summary judgment and brief in opposition to Montgomery County's motions on April 13, 2005.

14. Where a public officer misconstrues a statute about which there may be an honest difference of opinion, a proceeding in mandamus is an appropriate remedy to compel him to act in accordance with the required construction. *State ex rel. Atty. Gen. v. Hoglan* (1901), 64 Ohio St. 532, 60 N.E. 627; *State ex rel. Melvin v. Sweeney* (1950), 154 Ohio St. 223, 226, 43 O.O. 36, 94 N.E.2d 785.

■ {¶ 25} We reach a different conclusion, however, with regard to Montgomery County's request for a writ of prohibition directing the Kettering Municipal Court Clerk to stop charging the county the aforementioned costs incurred in connection with unsuccessful state-law prosecutions and to stop collecting them by offsetting those costs against the fine money. In order to obtain a writ of prohibition, Montgomery County must establish, inter alia, that the Kettering Municipal Court Clerk is exercising judicial or quasi-judicial power. *State ex rel. Henry v. McMonagle* (2000), 87 Ohio St.3d 543, 544, 721 N.E.2d 1051. We are unpersuaded that the billing and attempted collection of costs by a municipal court clerk constitutes judicial or even quasi-judicial action, which generally is defined as "the power to hear and to determine controversies." *State ex rel. Hensley v. Nowak* (1990), 52 Ohio St.3d 98, 99, 556 N.E.2d 171; see also *State ex rel. Recker v. Putnam Cty. Clerk of Courts* (1999), 87 Ohio St.3d 235, 718 N.E.2d 1290 (concluding that relator was not entitled to writ of prohibition preventing clerk of courts from attempting to collect costs without court order, as clerk did not exercise judicial or quasi-judicial authority in attempting to collect costs). Accordingly, we overrule Montgomery County's motion for summary judgment on its cross-claim for a writ of prohibition. Given that the Kettering Municipal Court Clerk *has not moved for summary judgment on this aspect of Montgomery County's cross-claim*, it remains pending in this litigation, despite what we perceive to be its lack of merit.[15]

■ {¶ 26} We also hold that the Dayton Law Library Association is entitled to summary judgment on its complaint for a writ of mandamus directing the Kettering Municipal Court Clerk to remit to Montgomery County the fine money that has been withheld as an offset against costs incurred in connection with unsuccessful state-law prosecutions. Based on the reasoning set forth above, the Dayton Law Library Association has a clear legal right to the relief prayed for, the Kettering Municipal Court Clerk is under a corresponding clear legal duty to perform the requested act, and the Dayton Law Library Association has no plain and adequate legal remedy.[16]

---

**15.** In her summary judgment motion, the Kettering Municipal Court Clerk has requested summary judgment on, inter alia, Montgomery County's "mandamus claims." The Kettering Municipal Court Clerk appears to have overlooked the fact that one aspect of Montgomery County's cross-claim sought relief in prohibition. In any event, the Kettering Municipal Court Clerk did not move for summary judgment on the prohibition portion of Montgomery County's cross-claim. As a result, it remains pending before us. In order to facilitate the entry of final judgment in this action, the Kettering Municipal Court Clerk may wish to move for summary judgment on the cross-claim for a writ of prohibition.

**16.** Even if the Dayton Law Library Association could bring an action for money judgment, it would not constitute an adequate remedy at law. This is so because future actions would be necessary if the Kettering Municipal Court Clerk continued to refuse to make the required

■■ {¶ 27} As for the Dayton Law Library Association's request for a writ of mandamus directing the Kettering Municipal Court Clerk to "cease and desist" offsetting the costs incurred in connection with unsuccessful state-law prosecutions against the fine money owed to Montgomery County, we conclude that this request sounds in injunction rather than mandamus. "A writ of mandamus compels action or commands the performance of a duty, while a decree of injunction ordinarily restrains or forbids the performance of a specified act." *State ex rel. Smith v. Indus. Comm.* (1942), 139 Ohio St. 303, 22 O.O. 349, 39 N.E.2d 838, paragraph two of the syllabus. Because the Dayton Law Library Association's request would restrict, rather than compel, action by the Kettering Municipal Court Clerk, the cause of action is one for injunctive relief, which we have no jurisdiction to grant.[17] *State ex rel. Forsyth v. Brigner* (1999), 86 Ohio St.3d 71, 72, 711 N.E.2d 684. Accordingly, we sua sponte dismiss the complaint for lack of jurisdiction insofar as it requests a writ directing the Kettering Municipal Court Clerk to "cease and desist" offsetting the costs incurred in connection with unsuccessful state-law prosecutions against the fine money owed to Montgomery County.[18]

■ {¶ 28} The last motion pending before us is a motion by Montgomery County to join the city of Kettering as an additional respondent. In support of the motion, Montgomery County expresses concern that the Kettering Municipal Court Clerk may have remitted to the city of Kettering the fine money that we have determined is owed to Montgomery County for the partial benefit of the Dayton Law Library Association.

---

payments. In the end, the Dayton Law Library Association might obtain a money judgment that would have to be enforced to compel the Kettering Municipal Court Clerk to perform the ministerial duty of making the payment. As a result, an action to obtain a money judgment does not constitute an adequate remedy at law. *State ex rel. Fenske v. McGovern* (1984), 11 Ohio St.3d 129, 131, 11 OBR 426, 464 N.E.2d 525.

17. It might be argued that the Dayton Law Library Association's request for a writ directing the Kettering Municipal Court Clerk to "cease and desist" sounds in prohibition, a type of relief that we do possess jurisdiction to grant. Even if the Dayton Law Library Association's cease-and-desist request were characterized as seeking relief in prohibition, however, it still would fail. As set forth above, we are unpersuaded that the Kettering Municipal Court Clerk is exercising quasi-judicial power when she collects unpaid costs by engaging in the self-help act of offsetting the costs incurred in connection with unsuccessful state-law prosecutions against the fine money owed to Montgomery County.

18. In light of our analysis herein, however, we do not anticipate that the Kettering Municipal Court Clerk will continue charging Montgomery County a "complaint" fee, a "court computer fund" fee, a "clerk computer fund" fee, and a "special projects fund" fee whenever a state-law charge results in dismissal or acquittal. If these charges do continue to be assessed against Montgomery County, the potential for injunctive relief presumably will be available in the trial court.

{¶ 29} Although we recognize that the Kettering Municipal Court Clerk may have turned the fine money over to the city of Kettering, we nevertheless will overrule Montgomery County's motion to add the city of Kettering as a party at this late date. Based on the reasoning set forth above, we have concluded that the Kettering Municipal Court Clerk owes the fine money to Montgomery County. Even if the money has been paid to the city of Kettering, we presently have no reason to doubt that the city will cooperate with its Municipal Court Clerk in transferring the funds to Montgomery County. If that does not occur, Montgomery County will be free to seek a court order compelling payment from the city of Kettering. In the interest of bringing the present proceedings to a long-awaited close, however, we will not countenance yet another delay by adding the city of Kettering as a party and triggering another round of briefing and motion practice based on Montgomery County's as-yet-unconfirmed fear that the City may impede the payment of fine money. Accordingly, Montgomery County's motion to join the city of Kettering as an additional respondent is overruled.

{¶ 30} Finally, we must address a remaining issue that requires brief discussion. It concerns requests for prejudgment interest on the withheld fine money that the Kettering Municipal Court Clerk owes to Montgomery County for the partial benefit of the Dayton Law Library Association. Although both Montgomery County and the Dayton Law Library Association have requested prejudgment interest, they have failed to brief the issue or to indicate the source of authority for an order directing the Kettering Municipal Court Clerk to pay prejudgment interest in this case. Consequently, they have not demonstrated their entitlement to summary judgment on this aspect of their claims, and it remains pending in this litigation along with Montgomery County's cross-claim for a writ of prohibition.[19] Given that these unresolved issues may be subject to resolution through summary judgment, we would encourage the parties to file appropriate motions to facilitate bringing this litigation to a close.

## II. Conclusion

{¶ 31} Based on the reasoning set forth above, we grant the requests by the Dayton Law Library Association and Montgomery County for a writ of mandamus directing the Kettering Municipal Court Clerk to pay Montgomery County the fine money that has been withheld as an offset against unpaid costs incurred in connection with unsuccessful state-law prosecutions.[20]

---

**19.** See footnote 15, supra.

**20.** During the pendency of this litigation, the Kettering Municipal Court Clerk appears to have continued deducting court costs incurred in connection with unsuccessful state-law prosecutions from the fine money owed to Montgomery County for the partial benefit of the Dayton

{¶ 32} In light of our disposition of the various motions discussed above, the only issues we see remaining in this litigation are (1) the requests by Montgomery County and the Dayton Law Library Association for prejudgment interest on the fine money that has been withheld by the Kettering Municipal Court Clerk and (2) Montgomery County's cross-claim for a writ of prohibition.

Writ of mandamus granted.

FAIN and DONOVAN, JJ., concur.

Law Library Association. As a result, we cannot state with specificity the present dollar amount of the Kettering Municipal Court Clerk's obligation.